ACCEPTED
03-14-00737-CV
5203124
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 1:41:17 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00737-cv

_____

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 1:41:17 AM
JEFFREY D. KYLE
Clerk

_____

CHASE CARMEN HUNTER, APPELLANT/PLAINTIFF v. DAVID MATTAX IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE, AND THE TEXAS DEPARTMENT OF INSURANCE, APPELLEES/DEFENDANTS

_____

APPELLANT'S NOTICE OF OTHER LITIGATION

_____

From Cause D-1-GN-13001957 In The 250th District Travis

County, Texas, The Honorable John K. Dietz Presiding

_____

Chase Carmen Hunter, pro se
340 S. Lemon Ave. #9039
Walnut, CA 91789
Telephone: 707-706-3647
Facsimile: 703-997-5999
Chase_Hunter@yahoo.com

TO: THE JUSTICES OF THIS COURT

COMES NOW, Chase Carmen Hunter, in proper person, and notifies this court of this other litigation that affects this appeal. See attached. The record in this appeal is not complete, Velva Price, the clerk of the underlying court, knows it is not complete; and she has refused to perform many required duties pursuant to, inter alia, Texas Rule of Appellate Procedure 34.5(c)(1) and Texas Gov't Code Section 522 et seq.

Respectfully Submitted,
/s/ Chase Carmen Hunter
Chase Carmen Hunter
Appellant, pro se
340 S. Walnut Ave. #9039, Walnut, CA 91789
Tel: 707-706-3647, Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## CERTIFICATION

I, Chase Carmen Hunter, swear under penalty of perjury that the foregoing statements are true and correct.

_____          _____5/8/2015_____
Chase Carmen Hunter

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon the parties shown below as indicated:

Cynthia A. Morales, Assistant Attorney General
By Efile on May 8, 2015
Cynthia.Morales@texasattorneygeneral.gov
Facsimile: (512) 477-2348

_____
Chase Carmen Hunter

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

CHASE CARMEN HUNTER,              )
        PETITIONER,             )  Case No._____
                                  )
vs.                             )
                                  )  VERIFIED COMPLAINT FOR
VELVA L. PRICE INDIVIDUALLY,  )  DECLARATORY JUDGMENT AND
IN HER OFFICIAL             )  PERMANENT INJUCTION
CAPACITY AS CLERK OF THE TRAVIS  )
COUNTY DISTRICT COURT IN TEXAS,  )  TRIAL BY JURY
AND THE TRAVIS COUNTY DISTRICT  )
COURT CLERK'S OFFICE        )
        RESPONDENTS.        )
                                  )
ADDRESS:                   )
VELVA L. PRICE            )
TRAVIS COUNTY DISTRICT COURT    )
1000 GUADALUPE ST         )
AUSTIN, TEXAS 78701        )
                                  )
_____)

## INTRODUCTION

1. The Petitioner, herein referred to as "Hunter", filed two lawsuits in Travis County Texas District Court ("TCTDC") in 2013; and the clerk of the TCTDC has violated, inter alia, Texas Rules of Civil Procedure and the Due Process Clause of the U.S. Constitution to block Hunter's lawsuits from moving forward.

2. Some of the issues of this lawsuit arise from, inter alia, willful violations of 18 U.S.C. § 873 (blackmail), 18 U.S.C. § 875(d) (extortion), 18 U.S.C. § 1951 et seq. (racketeering), 18 U.S.C. §§ 1961-1968 (racketeer influenced and corrupt

organizations), 18 U.S.C. §§ 1341 and 1343 (fraud and fraud by wire), 18 U.S.C. § 1033 (crimes affecting persons engaged in the business of insurance whose activities affect interstate commerce), 15 U.S.C. §§ 1-7 (anti-trust and restraint of trade), several protections guaranteed by the United States Constitution as described herein, including but not limited to the Fourteenth and Eighth Amendments, and articles I, II, V, XIV, XVII, and XVIII of the American Declaration of the Rights and Duties of Man ("ADRDM").

## JURISDICTION AND VENUE

3. This action arises under, inter alia, 42 U.S.C. §§ 1983, 1985, and 1986; 15 U.S.C. § 4; 18 U.S.C. §§ 3, 4, 241, and 242.

4. This Court "may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises" pursuant to 15 U.S.C. § 4.

5. 18 U.S.C. § 1034(b) allows for an injunction prohibiting violations of 18 U.S.C. § 1033.

6. This Court has jurisdiction pursuant to, inter alia, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1337 (anti-trust), 28 U.S.C. § 1343 (deprivation of rights, failure to prevent such deprivation, and failure to aid in preventing such deprivation), 28 U.S.C. § 1367 (supplemental), and any other relevant authority regarding the matters set forth herein.

1

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) et seq. because the Respondents are located in this district.

8. This Court may issue a declaratory judgment in this case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202.

## PARTIES

11. Chase Carmen Hunter ("**Hunter**") is a United States citizen.

12. Velva Price (**"Price"**) is the Clerk of TCTDC in Austin, Texas.

13. The TCTDC clerk's office (**"Clerk's Office"**) performs ministerial duties for TCTDC.

## NATURE OF LAWSUIT

14. This is a petition for a declaratory judgment and a permanent injunction.

15. Price is using and has allowed the using of her authority against Hunter, in violation of a) Texas Statutes, b) Texas regulations, c) United States Code, d) the United States Constitution, and e) Hunter's human rights.

16. Hunter has no ties to Texas other than the issues raised herein.

17. Hunter has no other adequate remedy.

## BACKGROUND AND FACTS

18. In June 2013 and July 2013, Hunter filed with the Clerk's Office two separate lawsuits. Both lawsuits are against a) the

Commissioner of Insurance ("Commissioner") for the Texas Department of Insurance ("TDI"), and b) the TDI.

19. The Clerk's Office knowingly and intentionally refused to perform required ministerial duties for these two lawsuits; the effect of which blocks and/or gives the appearance of blocking the TCDC's jurisdiction in these two lawsuits.

20. Cristina M., an employee of the Clerk's Office in 2013, created fraudulent documents in these two lawsuits in which she falsely states that she spoke with Hunter by telephone and that Hunter told Cristina M. that she agreed to pre-pay clerk filing fees of $252 each for the filing of each of these two lawsuits.

21. The truth is that Hunter had filed a motion to proceed without pre-payment of fees ("Motion IFP") in both lawsuits, Hunter had never spoken with Cristina M. or any other person who works in the Clerk's Office about payment of clerk's fees, and Hunter had not agreed to pre-pay court fees.

22. Upon receipt of Hunter's Motion IFP, pursuant to Texas Rule of Civil Procedure ("TRCP") 145(a), Price is required to issue citations and perform ministerial duties. But neither Price's predecessor (Price became the TCTDC Clerk in 2015.) nor Price have issued citations and neither have performed most required ministerial duties. Instead, Price's predecessor denied Hunter's Motion IFP even though Price's predecessor has

3

no authority to do so. And Price has taken no action to perform the required ministerial duties as set forth in TRCP 145(a).

23. Hunter received demand letters from the Clerk's Office, and Cristina M. which were mailed to Hunter from the Clerk's Office in Texas which demand that Hunter remit $252 for each of these two lawsuits to the Clerk's Office.

24. Hunter received letters from the Clerk's Office and Cristina M. that were mailed from Texas that threaten Hunter with debt collection if Hunter does not remit the $252 clerk filing fee for each of these two lawsuits.

25. Hunter received emails from Brooke Daniel ("Daniel") who worked in the Clerk's Office in 2013 which demand that Hunter remit to the Clerks' Office the Clerk's filing fees of $252 for each of these two lawsuits, fees for the issuance of citations, and fees for constable services.

26. The two lawsuits referenced herein seek relief from civil and criminal violations of state and federal laws, violations of the U.S. Constitution, and violations of human rights of which Hunter is the victim.

27. Price, the Clerk's Office, Cristina M., and Brooke Daniel have not used their authority to protect Hunter from these civil and criminal violations referenced herein. Rather, they are using and have used their authority to commit fraud upon the TCTDC to support the violations described in these two lawsuits.

4

28. The actions of Price and the Clerk's Office are criminal, intentional, willful, reckless and wanton. These actions have functioned to deny Hunter access to the TCTDC from which Hunter seeks relief from gross injustices as described in the two lawsuits that Hunter filed in TCTDC causes # D-1-GN-13-001957 and # D-1-GN-13-002576.

29. The Respondents in TCTDC causes# D-1-GN-13-001957 and D-1-GN-13-002576, are in default. Hunter filed motions with the TCTDC to enter a default judgment in both TCTDC causes. But because Price and the Clerk's Office have refused to perform ministerial duties, Price has not submitted Hunter's motions to the judge.

30. Hunter's motions are uncontested.

31. TCTDC has a "Central Docket" ("CD") and a "Submission Docket" ("SD"). The CD is for the scheduling of oral argument hearings. The SD is for the submission of uncontested motions without oral argument. A motion for default is processed on the SD unless the adverse party requests an oral hearing.

32. The local rules for the TCTDC also state in many different places that the judge may "grant the motion" or set the matter for a hearing which means that the TCTDC judges can grant a motion without a hearing and without requiring a physical or telephone appearance of the movant.

5

33. Hunter called the court administration office at (512) 854-2484 on April 10, 2015, to get a date for submitting her motions for default. But the Clerk's Office refused to set the motions for default on the SD and asked Hunter how much time she would need for the hearing. Hunter explained that the motions were for uncontested motions for default and that a hearing was not needed. But the employee of the Clerk's Office whose name is believed to be Annie required Hunter's motions for default to be scheduled on the CD. This employee told Hunter that she could schedule her motions any day of the week during the week of the 27th at 9am or 2pm (pursuant TCTDC local rules 2.4(b))

34. Annie told Hunter that Hunter needed to "announce" her motions "the week before". This means that a party can schedule a motion on the CD but scheduling is not sufficient to have the matter placed on the CD. The party must call the Clerk's Office the week before the scheduled date to confirm that the party still plans to appear at the scheduled date and time.

35. On April 20, 2015, unbeknownst to Hunter, Warren Vavra, the court administrator of the Clerk's Office, sua sponte, submitted Hunter's TCTDC cause # D-1-GN-13-002576 to the TCTDC, without notice to Hunter, for dismissal for want of prosecution. And the TCTDC entered a sua sponte order dismissing Hunter's TCTDC cause #D-1-GN-13-002576 for want of prosecution, thereby making Hunter's motion for default moot.

6

36. Hunter called the Clerk's Office on April 23, 2015, seven days prior to the scheduled date and time, to "announce". Hunter was told that her "announcement" was untimely because the deadline to "announce" is Wednesday at 5pm.

37. Hunter was told that her one remaining TCTDC cause # D-1-GN-13-001957 would be placed on the docket but that it would be moved to the bottom of the docket and may not be heard because Hunter did not "announce".

38. Hunter called the Clerk's Office again on April 23, 2015, to make arrangements to appear by telephone at the scheduled hearing which was scheduled for April 30, 2015. Hunter was told by Abdee, an employee of the TCTDC, on April 27, 2015, that Hunter's hearing was bumped to the bottom of the docket because Hunter did not "announce" [prior to Wednesday at 5pm]. Abdee suggested Hunter's motions would not be heard because Hunter did not "announce". Abdee said that she would contact Mr. Vavra, the Court Administrator, to see what "he wants to do about this". Hunter was not clear on what Abdee meant by "what he wants to do about this". Abdee also stated that when Hunter reschedules the motions [implying that there was no possible way that Hunter's motions would be heard on April 30, 2015] that Hunter should tell the scheduler that Hunter wanted to appear by telephone. Abdee said that telephone hearings are conducted only on Tuesdays at 2pm. However, there is nothing in the TCTDC local

rules or on Price's website that indicates telephone hearings are scheduled only on Tuesdays at 2pm. Although Abdee said that Hunter's motions were not likely to be heard because Hunter did not "announce" [prior to Wednesday at 5pm] and because the docket was "crazy this week", Abdee also told Hunter that Hunter could not cancel or reschedule her motion until after April 30, 2015, because the adverse party, who had not defended the either lawsuit for nearly two years, had received notices of the submission [which the Clerk's Office converted, as established by their actions, from motions for the SD to motions for the CD.]

39. Hunter checked the TCTDC docket on the TCTDC website on April 30, 2015, and saw her motion for default listed as the last case. Under the section where it lists which party scheduled the hearing, the docket sheet curiously showed "Other" when it should have shown "Plaintiff". Hunter was told by Lori, an employee of the TCTDC, at about 12:50pm CST on April 30, 2015, that Hunter's motion for default "would not go". Hunter asked for clarification on what Lori meant by "would not go" and Lori further explained that Hunter's motion for default would not be heard by the court because Hunter did not "announce" [prior to Wednesday at 5pm].

40. To be clear: Hunter "announced" 7 days prior to the scheduled hearing date.

8

41. To be clear: uncontested motions that do not require oral argument can, and often are, granted by the TCTDC without a hearing. We know that motions are granted by TCTDC without a hearing because TCTDC entered an order on its own motion to dismiss Hunter's TCTDC cause #D-1-GN-13-002576 (despite the fact that Price knew that Hunter had filed a motion for default and had scheduled that motion for default for a hearing to be held on April 30, 3015.)

42. Hunter's motions for default complied fully with TRCP and a hearing was not required. The adverse party received notices of the submissions and did not request an oral hearing for either of the two motions.

43. Further, Hunter appeared in TCTDC on February 18, 2015, in TCTDC cause D-1-GN-13-001957 and did not "announce". Yet, the hearing was held. Hunter notified the TCTDC about two days before February 18, 2015, that Hunter planned to appear by telephone. And Hunter's telephone appearance was accommodated by the TCTDC.

44. Hunter's motions for default for TCTDC causes # D-1-GN-13-001957 and D-1-GN-13-002576 were not granted or denied on April 30, 2015. And the only reason why these motions for default have not been granted and entered is because of the Respondents' willful gross errors, willful refusal to perform required ministerial duties, and unpredictable, spontaneous changes to

court scheduling rules that have unduly blocked Hunter's motions for default from being entered by the TCTDC.

45. In addition, Hunter has an appeal pending in the Texas Third Court of Appeals ("TTCA") cause 03-14-00737-CV in which Price has refused to perform a ministerial duty. On April 6, 2015, Hunter served Price with a written request that she supplement the record in this appeal. Price has not responded. Meanwhile, on March 30, 2015, the adverse party sent a written request to Price that Price supplement the record; and Price responded on March 31, 2015, and supplemented the record with documents that pre-dated the date Price provided the TTCA with the initial appellate record which means that Price's first delivery of the clerk's record to the TTCA was not complete. And Price's refusal to respond to Hunter's request that she supplement the appellate record is blocking Hunter's appeal.

## PRAYER.

1. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.
2. There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights of the Petitioner to warrant relief under 28 U.S.C. § 2201.
3. The harm to the Petitioner as a direct result of denying the Petitioner the default judgments to which Hunter is entitled is sufficiently real and imminent to warrant the issuance of

a conclusive declaratory judgment clarifying the legal relations of the parties.

4. The Petitioner requests that this Court declare that Hunter is entitled to a default judgment in TCTDC causes # D-1-GN-13-001957 and # D-1-GN-13-002576 and that Price's actions have unlawfully blocked Hunter from obtaining these default judgments.

5. The Petitioner requests that the Respondents be enjoined from refusing to provide an accurate clerk's record in TTCA cause 03-14-00737-CV; and that the Respondents supplement the clerk's record as Hunter requested and that the Respondents do so within 10 days.

6. Hunter demands she be awarded her reasonable attorney's fees and costs including all appellate fees and costs incurred, and award Hunter such further relief to which she may be entitled.

### JURY DEMAND

Hunter is entitled to declaratory relief as a matter of law upon the uncontested facts. But in the event that this Court rules that the Hunter is not entitled to declaratory relief, the Petitioner requests a trial by jury to determine all issues of fact.

Respectfully Submitted,

*ccfhh*

Chase Carmen Hunter
Petitioner, pro se
340 S. Lemon Ave #9039, Walnut, CA 91789
Tel: 707-706-3647, Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## VERIFICATION

I, Chase Carmen Hunter, HEREBY VERIFY, under penalty of law and penalty of perjury, that the facts in the above Verified Petition For Declaratory Judgment are true and accurate. **WHEREFORE** the Petitioner respectfully enters her testimony into this record.

_____    5/7/15
Chase Carmen Hunter                 Date